COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

§

IN THE INTEREST OF R.K.P., A CHILD    §

§

§

§

No. 08-11-00351-CV

Appeal from

271st District Court

of Wise County, Texas

(TC # CV-08-09-659)

## **O P I N I O N**

Lacy Parnell appeals from a default judgment in a suit affecting the parent-child relationship. At issue is the custody of her daughter. We decide today whether Parnell filed an answer, entered a general appearance, or wholly defaulted. Because we conclude she filed an answer, we reverse and remand for trial.

### FACTUAL AND PROCEDURAL SUMMARY

Lacy Parnell and Gaston Blake Bounds were appointed joint managing conservators of their daughter by order dated July 27, 2009. On May 23, 2011, Bounds filed a petition to modify the parent-child relationship in which he sought to be named as "the person who has the right to designate the primary residence of the child." He alleged that Parnell had a history of family violence and abused controlled substances. He asked that the court order supervised visitation

with the exchange of possession to occur in a protective setting. He also requested that Parnell refrain from of consumption of alcohol or controlled substances within twelve hours before and during visitation, and that she attend and complete a battering intervention and prevention program. A hearing for temporary orders was set for 9:00 a.m. on June 6, 2011. Parnell was served on May 24th.

According to Parnell's affidavit attached to her motion for new trial, she entered University Behavioral Health of Denton on June 3rd. She informed Bounds that she would be unavailable to attend the hearing on the 6th. His mother, Johnna Bounds, picked up the child and promised to tell the court that Parnell was hospitalized. Parnell gave Ms. Bounds her patient identification number, her phone number and her address. She was later assured that this information had been provided to Bounds. Nevertheless, Parnell prepared a letter to the court advising of her hospitalization and her inability to attend the hearing on June 6th. The hospital staff agreed to fax the letter to the court, but the receiving fax was busy several times. The letter was eventually received by the court clerk, but the hearing had already been completed. In the letter, Parnell asked for a continuance and promised to be physically present at the courthouse on the day of her release from treatment. The docket sheet reflects that the letter was filed of record on June 9th at 1:35 p.m.

Temporary orders were entered appointing Bounds as temporary sole managing conservator, relief he had not yet requested. Parnell was appointed temporary possessory conservator. Visitation was not specified other than that Parnell would have possession and access at times and places as agreed by the parties and under the supervision of persons designated by Bounds. Alternatively, visitation would be scheduled and supervised by the Volunteers Advocating for Children at a minimum of two hours per week. These orders were

signed on June 9 and filed with the district clerk at 1:35 p.m. At 1:37 p.m. -- two minutes later -- Bounds filed a first amended petition to modify in which he sought sole managing conservatorship. The clerk mailed the orders to Parnell on June 10th to the address then on file with the court. The envelope was returned as undeliverable because Parnell no longer lived there.

Parnell was released from the hospital on June 12th. She moved in with her father in Cleburne, Texas, and by the end of June, she had spoken with Bounds at least three or four times. She also provided the court with her new address. The docket sheet confirms this, reflecting that the court knew the Cleburne address and mailed the temporary orders there on June 14th. According to Parnell, she contacted Bounds attorney, Jennifer Wren, in early July. When asked whether a final hearing had been scheduled, Wren told Parnell that no hearing had been set. The record reflects a letter signed by Wren on June 23rd confirming that a final hearing had been set for Monday, August 1st.

Parnell never received notice and did not appear at the hearing. Wren admitted that no notice was sent. In a scant four pages of testimony, Bounds asked the court (1) to make the temporary orders permanent, (2) to order Parnell to complete drug screening, (3) to order Parnell to pay child support of $227.72 per month; and (4) to change the child's surname from Parnell to Bounds.[1] The trial court granted all relief requested and denied Parnell's motion for new trial. She had attached to the motion her affidavit, a copy of the letter to the court dated June 5th; and

---

[1] Default judgments in family law proceedings are quite different from civil cases generally. *See Considine v. Considine,* 726 S.W.2d 253 (Tex.App.--Austin 1987, no writ) and *Armstrong v. Armstrong,* 601 S.W.2d 724 (Tex.Civ.App.--Beaumont 1980, no writ) (default judgment taken on a motion to modify managing conservatorship reversed because petition is not taken as confessed for want of an answer; even if respondent fails to file an answer, the petitioner must adduce proof to support the material allegations in the petition). Bounds provided no testimony as to a material and substantial change in circumstances. When asked, "Do you believe these provisions are in the child's best interest?" Bounds replied, "Yes" without elaboration.

copies of two telephone text messages with Johnna Bounds dated June 3rd and June 13th.[2] This appeal follows.

Parnell brings two issues for review. In Issue One, she alleges she is entitled to a new trial under the requirements of due process while in Issue Two, she contends she is entitled to a new trial because she has met the traditional elements set forth in the landmark case of *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939).

## STANDARD OF REVIEW

A trial court's decision on a motion for new trial is reviewed for an abuse of discretion. *Rivas v. Rivas*, 320 S.W.3d 391, 393 (Tex.App.--El Paso 2010, no pet.); *Munoz v. Rivera,* 225 S.W.3d 23, 26 (Tex.App.-El Paso 2005, no pet.), *citing Cliff v. Huggins,* 724 S.W.2d 778, 778 (Tex. 1987); *American Paging of Texas, Inc. v. El Paso Paging, Inc.,* 9 S.W.3d 237, 239 (Tex.App.-El Paso, 1999, pet. denied). A trial court must set aside a default judgment when the movant satisfies the requirements articulated in *Craddock*. *Director, State Employees Workers' Compensation Division v. Evans,* 889 S.W.2d 266, 268 (Tex. 1994); *Texas Sting, Ltd., v. R.B. Foods, Inc.,* 82 S.W.3d 644, 650 (Tex.App.--San Antonio 2002, pet. denied). *Craddock* has been applied to post-answer defaults in which a defendant fails to appear for trial. *Ivy v. Carrell,* 407 S.W.2d 212, 213 (Tex. 1966). Parnell must demonstrate that: (1) her failure to appear was not intentional or the result of conscious indifference; (2) she has a meritorious defense; and (3) the granting of a new trial will not operate to cause delay or injury. *Evans,* 889 S.W.2d at 268. Where the *Craddock* elements are satisfied, it is an abuse of discretion for the trial court to deny a motion for new trial. *Evans,* 889 S.W.2d at 268; *Texas Sting, Ltd.,* 82 S.W.3d at 650.

Parnell bears the burden of proof to show that her failure to appear at trial was not the result of conscious indifference. *Munoz,* 225 S.W.3d at 28; *Liberty Mut. Fire Ins. Co. v. Ybarra,*

---

[2] In his brief, Bounds discounts the text messages because no address information was provided.

751 S.W.2d 615, 618 (Tex.App.--El Paso 1988, no writ).  In determining whether her failure to appear was due to intentional disregard or conscious indifference, we must look to her knowledge and conduct. *Evans,* 889 S.W.2d at 269; *Strackbein v. Prewitt,* 671 S.W.2d 37, 39 (Tex. 1984).  Conscious indifference has been defined as failing to take some action which would seem obvious to a person of reasonable sensibilities under the same circumstances. *Id.; Johnson v. Edmonds,* 712 S.W.2d 651, 652 (Tex.App.--Fort Worth 1986, no writ).  If the factual assertions in a movant's affidavit are not controverted, the movant satisfies her burden if her affidavit sets forth facts that, if true, negate intentional or consciously indifferent conduct. *Evans,* 889 S.W.2d at 269; *Strackbein,* 671 S.W.2d at 38-39. In determining if the factual assertions are controverted, the court looks to all the evidence in the record. *Evans,* 889 S.W.2d at 269.

## CHARACTERIZATION OF THE JUNE 5TH LETTER

Parnell wrote the following letter to the trial court the day before the hearing on temporary orders:

*Sunday, June 5, 2011*

*To:    Presiding Judge*
*From: Lacy Parnell (Respondent)*
*Re:    Temporary Custody Hearing for daughter, (R.K.P)*

*I, Lacy Kay Parnell, am the mother of (R.K.P).  I am currently in University Behavioral Health, Denton, Texas (U.B.H.) (940-320-8100).  My patient identification number is 24891.*

*I am in in-patient treatment as requested by Gaston Blake Bounds. Therefore, I cannot be physically present today, June 6, 2011 for the custody hearing of my daughter.*

*Because of this, I am requesting a continuance until I can be physically present once my treatment is completed within 7-10 days.  Also, please be advised that I will be in contact and be physically present at the courthouse the day of my release from the treatment center.*

*Respectfully,*
*Lacy Parnell*

The letter was accompanied by a facsimile cover sheet directed to the attention of the Wise County Court Clerk, bearing the letterhead of UBH, the telephone number of UBH, Cause No. CV-08-09-659, and the name and phone number of a contact person.

The Supreme Court has discussed three types of default judgments that contrast to "a judgment upon trial." *Stoner v. Thompson,* 578 S.W.2d 679, 682 (Tex. 1979). The first is the traditional no-answer default. Second is the judgment *nihil dicit,* which occurs when a defendant has (1) entered some plea, usually of a dilatory nature, but one which does not place the merits of the plaintiff's case in issue; or (2) withdrawn his answer. *Frymire Engineering Co. v. Grantham,* 524 S.W.2d 680, 681 (Tex. 1975)(per curiam). A no-answer default and a judgment *nihil dicit* are so similar that the same rules apply to each with respect to the effect and validity of the judgment. *See Stoner,* 578 S.W.2d at 682.

A judgment *nihil dicit* is proper when a party appears but has filed no answer on the merits. *O'Quinn v. Tate,* 187 S.W.2d 241, 245 (Tex.Civ.App.--Texarkana 1945, no writ). It is stronger than a no-answer default in that a judgment *nihil dicit* acts as a confession of judgment. *Gomperts v. Wendeborn,* 427 S.W.2d 904, 905 (Tex.Civ.App.--Austin 1968, no writ). These two types of judgments contrast with a post-answer default judgment, in which an answer is on file but the defendant fails to appear at trial. The difference is that a post-answer default constitutes neither an abandonment of the answer nor an implied confession of any issues joined by the answer. A judgment cannot be entered on the pleadings; the plaintiff must offer evidence and prove his case as in a judgment upon a trial. *See Stoner,* 578 S.W.2d at 682.

An original answer may consist of motions to transfer venue, pleas to the jurisdiction,

pleas in abatement, or any other dilatory pleas. TEX.R.CIV.P. 85. If a timely answer has been filed, or the respondent has otherwise made an appearance in a contested case, she is entitled to notice of the trial setting as a matter of due process. *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84-86, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988); *Gonzalez v. State,* 832 S.W.2d 706, 707 (Tex.App.-Corpus Christi 1992, no writ); *Langdale v. Villamil,* 813 S.W.2d 187, 190-91 (Tex.App.--Houston [14th Dist.] 1991, no writ). Even a *pro se* answer in the form of a signed letter that identifies the parties, the case, and the defendant's current address, constitutes a sufficient appearance to require notice to that party of any subsequent proceedings. *Smith v. Lippmann,* 826 S.W.2d 137, 138 (Tex. 1992).

The Supreme Court transferred this case to us from the Second Court of Appeals pursuant to a docket equalization order. The Rules of Appellate Procedure require us to decide this case in accordance with precedent of the Second Court of Appeals. *See* TEX.R.APP.P. 41.3. The Fort Worth Court has spoken and spoken strongly that Texas has imposed minimal standards for an "answer." *In re K.B.A.,* 145 S.W.3d 685, 691 (Tex.App.--Fort Worth 2004, no pet.). There, the father submitted a *pro se* letter which was signed by him, contained the cause number, the names of the parties and the children, and the parties' addresses. In the appeal from the default judgment entered against him, the appellate court said:

> Although appellant's letter was not in the 'standard form' of an answer, it nevertheless gave the court a timely response acknowledging receipt and acceptance of appellees' citation and petition. *See Smith v. Lippmann,* 826 S.W.2d 137, 138 (Tex. 1992); *see also Santex Roofing Sheet Metal, Inc. v. Venture Steel, Inc.,* 737 S.W.2d 55, 56 (Tex.App.--San Antonio 1987, no writ)(holding that 'Texas courts have always been reluctant to uphold a default judgment without notice where some response from the defendant is found in the record'). It constituted an appearance in the matter and was sufficient to defeat a no-answer default judgment.

*Id.* The court noted that the letter was submitted well within the time frame for filing an answer

to the lawsuit. Such is the case here. Parnell was served on May 24th; the letter was received by the court clerk on June 6th and filed of record on June 9th.

Bounds responds that the letter did not constitute an answer because it did not contain a current address at which he could send notice. The cover sheet included the name of the hospital, a contact person for questions, and a phone number. Bounds suggests that her residence at the hospital were purely temporary and that is certainly true. But we know that Parnell had notified the court of her Cleburne address by June 14th, because the court clerk mailed the temporary orders to that address on that date. The answer date would have been June 17. And despite Bounds' protestations to the contrary, he and his mother knew Parnell's whereabouts from June 3rd forward. His attorney knew as well because Parnell called her. Standing alone, these contentions might be valid, but the record reveals much more. Wren told Parnell to contact the court, which she had already done. In fact, the docket sheet notation of June 14th reflects the change of address and recites the Cleburne address. Before taking a default judgment, the plaintiff/petitioner must establish that no answer has been filed and elicit evidence of that fact. When the trial court inquired, the following colloquy occurred:

> Wren: We're ready, Your Honor. Respondent was served and then filed an answer.
>
> The Court: Okay. Well, there is this also. Certified -
>
> Wren: Probably her certified copy of the order. Probably what happened. They probably sent a copy. I sent one too.[3]
>
> The Court: But she was personally served also?
>
> Wren: Oh, yes, I do. I need to copy it first.
>
> The Court: I'm just trying to find where she was - looks like she was served. Oh,

---

[3] Clearly, counsel could glean from the file that the court clerk had sent the temporary orders to Parnell at the Cleburne address. She did not specify where she had sent the orders.

there we go.  Is this Petition to Modify?  Would that be the 24th day of May?  May 24?

Wren:  Yes, we served  --

The Court:  May 24, 2010.

Wren:  We had a final hearing.  We had a temporary hearing already.

The Court:  Oh, okay.

Wren:  And then now we have that one set.

The Court:  Yeah, she never filed an answer?

Wren:  She never appeared at the first temporary hearing.  So now we're appearing for the final hearing.

The Court:  Okay.  She's in default then?

Wren:  Yes.

The Court:  She's been served?

Wren:  Yes.

Wren told the court Parnell had been served, had not "answered" and had not "appeared" at the temporary hearing.  Her statements demonstrate she knew the clerk had sent the temporary orders to Cleburne but she showed what the trial court characterized as "a stack of attempted notices and correspondence sent to the Respondent/Mother, all of which had been returned to counsel."[4]  The court's file clearly showed Parnell's current address effective June 14th, well before Wren ever set the case for trial.  And Parnell's affidavit, which was not controverted on this issue, indicates that Wren knew the case had been set for final hearing at the time Parnell inquired about a setting.

We conclude that the letter constituted an answer, but even if we are mistaken, it at the

---

[4]  From this, one could infer that she sent the temporary orders to the old address, although no exhibits were introduced into evidence.

very least constituted an appearance. When a party has appeared, she is entitled to notice of trial pursuant to Rule 245. *Blanco v. Bolanos,* 20 S.W.3d 809, 811 (Tex.App.--El Paso 2000, no pet.); *Turner v. Ward,* 910 S.W.2d 500, 505 (Tex.App.--El Paso 1994, no writ). The rule provides that the "[c]ourt may set contested cases on written request of any party . . . with reasonable notice of not less than forty-five days to the parties of a first setting for trial . . . ." TEX.R.CIV.P. 245. A trial court's failure to comply with the rules of notice in a contested case deprives a party of the constitutional right to be present at the hearing, to voice her objections in an appropriate manner, and results in a violation of fundamental due process. *Platt v. Platt,* 991 S.W.2d 481, 483 (Tex.App.--Tyler 1999, no pet.). Thus, if the respondent does not have notice of the trial setting as required by Rule 245, the default judgment should be set aside because it is ineffectual. *Id.* at 484.[5]

## COMPLIANCE WITH *CRADDOCK* AND DUE PROCESS?

When a party receives *no* notice of a trial setting, she satisfies the first prong of *Craddock* and need not meet the remaining two. *Rivas,* 320 S.W.3d at 394, *citing Lopez v. Lopez,* 757 S.W.2d 721, 723 (Tex. 1988) and *Texas Sting, Ltd.,* 82 S.W.3d at 650. To require otherwise would violate her federal due process rights under the Fourteenth Amendment. *Rivas,* 320 S.W.3d at 394, *citing Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). We sustain Issues One and Two, and reverse and remand for a trial on the merits.

August 23, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

---

[5] If Wren had sent Parnell a copy of her May 23rd letter to the clerk confirming the final hearing, Parnell would still not have received 45 days' notice.